UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| REGINA PAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00166-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Regina Page ("Plaintiff") brought this action pursuant 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") prior to June 26, 2020. Each party has moved for judgment [Doc. 10 & Doc. 13] and filed supporting briefs [Doc. 11 & Doc. 14]. For the reasons stated below: (1) Plaintiff's motion for judgment on the pleadings [Doc. 10] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 13] will be **GRANTED**; and (3) the partially favorable decision of the Commissioner will be **AFFIRMED**.

I.   ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her applications for DIB and SSI on February 27, 2019, alleging disability beginning May 1, 2018. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held telephonically on September 18, 2020. On October 29, 2020, the ALJ found Plaintiff was not disabled prior to June 26, 2020, but

began to qualify as disabled on that date through the date of the ALJ's decision.[1]  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed the instant action to challenge the ALJ's decision denying her benefits for the time period between her alleged onset date of May 1, 2018, and June 26, 2020.

II.     **FACTUAL BACKGROUND**

    A.     **Education and Employment Background**

Plaintiff has at least a high school education and is able to communicate in English.  She has past relevant work as a teacher aide and a retail department manager.  Both of these occupations are considered skilled in the Dictionary of Occupational Titles ("DOT").  The teacher aide occupation is generally performed at the light exertional level, and the retail manager occupation is generally performed at the medium exertional level.

    B.     **Medical Records**

In her March 2019 Disability Report, Plaintiff alleged disability due to lupus, depression, anxiety, joint pain, and "tremors" (Tr. 248).  While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

    C.     **Hearing Testimony**

At the telephonic hearing before the ALJ on September 18, 2020, Plaintiff, Plaintiff's husband, and a vocational expert ("VE") testified.  Plaintiff was represented by counsel at the hearing.  The Court has carefully reviewed the transcript of the hearing (Tr. 33-59).

---

[1] Plaintiff turned 50 years old on June 26, 2020, which is considered a "person closely approaching advanced age."  20 C.F.R. §§ 404.1563(d) & 416.963(d).  Pursuant to the Medical-Vocational Rules in Appendix 2 to Subpart P of 20 C.F.R. Part 404, a person with Plaintiff's residual functional capacity, education, and work history automatically qualifies as disabled once they turn 50 years old.  The Medical-Vocational Rules (often referred to as the "Grid Rules") are available at: https://www.ssa.gov/OP_Home/cfr20/404/404-app-p02.htm.  In this case, the ALJ determined Grid Rule 201.14 directed a finding of disability once Plaintiff turned 50 (Tr. 26).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

  **B.** **The ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements through December 31, 2023. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, May 1, 2018. At step two, the ALJ found Plaintiff had the following severe impairments: (1) lupus, (2) fibromyalgia, (3) obesity, (4) depression, and (5) anxiety.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) & 416.967(a), with the following qualifications:

- She can have no concentrated exposure to temperature, humidity, or pulmonary irritants.

- She can maintain concentration for simple tasks and adapt to routine change only.

- She can have no more than occasional public interaction.

(Tr. 20).

At step four, the ALJ found Plaintiff has been unable to perform her past relevant work since May 1, 2018. At step five, the ALJ found that prior to June 26, 2020, there were occupations

4

Case 2:21-cv-00166-SKL   Document 21   Filed 09/23/22   Page 4 of 17   PageID #: 657

with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including as table worker, stuffer, and document preparer. Plaintiff turned 50 on June 26, 2020, however, thereby moving from the "younger person" age category to the "person closely approaching advanced age" category. *See* 20 C.F.R. §§ 404.1563(c)-(d); 416.963(c)-(d). As a result, the ALJ found that once Plaintiff turned 50 she qualified as disabled "by direct application of Medical-Vocational Rule 201.14." (Tr. 26). Thus, as previously noted, the ALJ found Plaintiff was not under a disability from her alleged onset date of May 1, 2018, until her 50th birthday on June 26, 2020, but on her 50th birthday began to qualify as disabled under the Grids.

## IV. ANALYSIS

Plaintiff asks the Court to review the ALJ's decision to deny benefits for the period of time between May 1, 2018, and June 26, 2020 [Doc. 11 at Page ID # 609]. She argues: "The ALJ failed to mention or consider 3rd party statements concerning the Claimant's condition when evaluating the intensity, persistence and limiting effects of her symptoms and relating those to her Residual Functional Capacity." [*Id.* at Page ID # 610]. She seeks a remand of her claim for further administrative proceedings concerning the disputed time period, or in the alternative, an award of benefits from the Court for the disputed time period.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek*

5

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Nevertheless, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No.

1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

> **B. The ALJ's Assessment of the Lay Witness Statements in Connection with Plaintiff's Symptoms and RFC**

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

In this case, Plaintiff's husband testified at the administrative hearing. In addition, the record contains evidence in the form of written statements from several of Plaintiff's family members and one of Plaintiff's friends regarding Plaintiff's condition. Plaintiff argues the ALJ's decision should be reversed because these statements "were never considered by the ALJ, never mentioned in his decision, or considered when evaluating her symptoms as required by SSR[2] 16-3p." [Doc. 11 at Page ID # 623]. The Commissioner argues that "controlling regulations did not require the ALJ to articulate persuasiveness findings regarding lay witness statements." [Doc. 14 at Page ID # 635]. Moreover, the Commissioner argues, "the ALJ carefully considered Plaintiff's

---

[2] Social Security Ruling

own subjective complaints, which were essentially identical to the content of the lay witness statements." [*Id.*]. As a result, the Commissioner contends, Plaintiff "has not shown that the ALJ's residual functional capacity assessment was unsupported by substantial evidence." [*Id.*].

The ALJ found that while Plaintiff's impairments could reasonably be expected to cause the symptoms she complained of, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported" (Tr. 24). The ALJ discussed Plaintiff's testimony regarding her symptoms as follows:

> At [the] hearing, the claimant testified that she had lupus, which caused severe fatigue. She described pain in her joints including her shoulders, ankles, knees, and feet. The claimant reported that walking and standing made her pain worse in her feet and knees, and that even sitting hurt. She stated that she was prescribed medications for her lupus, with changes and increases as needed. The claimant asserted that she was unable to lift 20 pounds, stand 5 minutes, and walk 5 minutes, and she advised [she] was not able to work 40 hours [per] week, as she would miss a lot of days. She testified that she had depression and anxiety, and that she was working with a therapist because she was unable to leave her home. She stated that she had difficulty taking a shower due to fatigue, and that her daughters had to help wash her hair now. The claimant reported that she was unable to go to parks with her grandchildren or even be outside because the heat made her sick.

(Tr. 21).

The ALJ then went on to discuss the medical evidence, including that Plaintiff had been diagnosed with lupus and that Plaintiff's medications, and at least one steroid shot, offered relief (Tr. 21-23). The ALJ noted normal findings on range of motion tests in April and August 2018; normal gait in April, August, and October 2018; no medication side effects in September 2018; at most mild to moderate limitations in mental functioning at a consultative psychological exam in June 2019; and no apparent mental distress in July 2019 (T. 21-23).

8

The ALJ specifically discussed how, on June 4, 2020, Plaintiff advised her primary nurse practitioner, Lisa Lundy, that "she did not feel like her medications were working, as she had worsening joint pain and low energy level." (Tr. 22-23). Nevertheless, as the ALJ also discussed, NP Lundy gave Plaintiff a steroid shot and Plaintiff informed another provider that after the shot, she was "feeling better." (Tr. 23, Tr. 566). The provider (John S. Sergent, M.D., of Vanderbilt Rheumatology) noted Plaintiff's facial rash cleared up following the shot, she "Appear[ed] happy," and she had no swelling in her fingers or wrists (Tr. 566).

At step two, the ALJ also noted inconsistencies between Plaintiff's reported mental symptoms and the record. For example, the ALJ noted that despite Plaintiff's allegations regarding her ability to interact socially, she was "described as pleasant and cooperative and appeared comfortable during appointments," and she was "also able to shop, spend time with family, and live with others." (Tr. 20). As such, the ALJ concluded Plaintiff had only moderate limitations in interacting with others. The ALJ also found Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, noting that despite her allegations of disabling impairments, she was able to prepare meals, play board games with her grandchildren, and watch movies and TV (Tr. 20, 268-70). The ALJ observed the record did "show any mention of distractibility," and that the consultative psychological examiner found only mild limitations in concentration (Tr. 20, 23-24).

Ultimately, the ALJ "accounted for the claimant's lupus and fibromyalgia [by] limiting her to sedentary work with no concentrated exposure to temperature extremes, humidity, or pulmonary irritants." (Tr. 23). To account for her mental limitations caused by depression and anxiety, the ALJ further limited Plaintiff to simple tasks, routine change, and no more than occasional public interaction (Tr. 23). Thus, the ALJ clearly credited aspects of Plaintiff's testimony in assessing an

extremely limited RFC. In fact, as discussed earlier in this opinion, as a result of her limited sedentary RFC, Plaintiff automatically qualified as disabled beginning on her 50th birthday. However, the ALJ concluded: "Based on a thorough review of the medical evidence of record, as well as the claimant's testimony at the hearing and function reports submitted by the claimant, the undersigned finds that the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms." (Tr. 24). These are appropriate considerations for assessing Plaintiff's reported symptoms and the severity of the symptoms and provide support for the ALJ's decision in this case.[3]

As mentioned above, Plaintiff's specific complaint in this case is that the ALJ did not consider the statements/testimony from Plaintiff's family members and her friend[4] in assessing her reported symptoms and complaints. She elaborates:

> If considered, the ALJ may very well have found the claimant was disabled since her onset date through June 25, 2020. The medical evidence supports the consistency of the symptoms alleged by the claimant from May 2018 through the time of the hearing. The non-medical source statements are consistent with not only the testimony of the claimant but are based on eyewitness accounts and observations of the claimant for the past two years. Individuals who socialized, lived with, and frequented the claimant on a regular basis. The ALJ's failure to consider them in his analysis is reversible error and the case should be remanded for further consideration by the ALJ or in the alternative the benefits be granted on the record for the period from May 1, 2018, through June 25, 2020, as they show the claimant had limitations with flare-ups when she could not function enough to work a full-time work week 8 hours per day on a consistent basis.

---

[3] The Court notes Plaintiff does not make any arguments related to the ALJ's assessment of her symptoms in light of her fibromyalgia diagnosis/impairment, and so the Court finds any fibromyalgia-specific issues waived. *See Emerson v. Novartis Pharma Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

[4] Such evidence is sometimes referred to in relevant authorities and herein as "third-party" evidence or evidence from "other persons."

> The 3rd party statements mention her Activities of Daily Living limitations in need of help bathing and washing her hair. (TR 52, 322, 325, 327) She needed help cleaning and doing any household chores. (TR 52, 325, 327) She was often in bed sick. (TR 52, 321, 326) All these statements comport with the statements of the claimant in relation to the symptoms she complained of with her physicians and in her functional assessments.

[Doc. 11 at Page ID # 623].[5]

In contrast to Plaintiff's argument, the ALJ clearly did, at least, consider Plaintiff's husband's testimony. The ALJ's decision provides:

> Greg Page, the claimant's husband, testified that prior to her becoming sick, the claimant worked two jobs and took care of herself and family. He stated that after she came down with lupus, she started hurting and was worn out. Mr. Page advised that after 5 to 10 minutes she had to sit down, and that she usually did not finish what she started. He reported that he helped the claimant shower and get dressed, and that he did the housework. Mr. Page noted that he worked outside the home, and that the claimant was alon[e] during the day. He testified that sometimes the claimant could not get out of bed. Mr. Page stated that the claimant was depressed and that she had problems with her memory.

(Tr. 21). However, the ALJ failed to assign a specific weight to Mr. Page's testimony and failed to discuss the written statements from Plaintiff's family members and friend as argued by Plaintiff. The pertinent issue is whether these failures result in reversible error.

As the Commissioner points out, applicable regulations state that ALJs are not required to articulate in the written decision how they consider evidence from nonmedical sources, which would include such evidence as Plaintiff's husband's testimony and the statements from Plaintiff's

---

[5] Neither party argues for different treatment of the testimony from Plaintiff's husband versus the written statements from Plaintiff's family members and friend, and the Court finds no reason to treat them differently in this case. *See Decheney v. Comm'r of Soc. Sec.*, No. 1:13-cv-1302, 2015 WL 4526836, at *9 n.5 (W.D. Mich. July 27, 2015) (rejecting Commissioner's argument that testimony should be treated differently than third-party report).

11

family members and friend. *See* 20 C.F.R. § 404.1520c(d); *see also James M.M. ex rel. Kathryn E.M. v. Saul*, No. 20-4005-JWL, 2020 WL 6680386, at *5 (D. Kan. Nov. 12, 2020) ("Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from nonmedical sources." (citing 20 C.F.R. § 404.1520c(d))). Plaintiff does not cite to any authority wherein a case was remanded for an ALJ's failure to articulate their consideration of third-party evidence.

Nevertheless, it is undisputed that ALJs are required to consider all relevant evidence and provide a reasoned explanation for their conclusions when evaluating symptoms and assessing a claimant's RFC. *See* SSR 16-3p, 2017 WL 5180304, at *4 (SSA Oct. 25, 2017) ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; **statements and other information provided by** medical sources and **other persons**; and any other relevant evidence in the individual's case record." (emphasis added)); 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.").

In other words, the ALJ "is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The failure to discuss or evaluate evidence from a third party simply "is not necessarily reversible error." *Weaver v.*

12

*Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2015 WL 64873, at *10 (E.D. Tenn. Jan. 5, 2015) (citing *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012)) (other citation omitted).

Courts in this district and elsewhere in the Sixth Circuit have found harmless error when an ALJ fails to discuss third-party reports or statements that are "repetitive of the plaintiff's assertions." *Weaver*, 2015 WL 64873, at *10; *see also Beckett v. Comm'r of Soc. Sec.*, No. 1:17-cv-00303-TWP-SKL, 2018 WL 7254710, at *10 (E.D. Tenn. Oct. 5, 2018), *adopted in pertinent part*, 2019 WL 183830 (E.D. Tenn. Jan. 14, 2019); *Ellis v. Astrue*, No. 3:11-CV-535, 2012 WL 5304203, at *4 (E.D. Tenn. Oct. 4, 2012) (finding that statements from claimant's daughter are "basically cumulative, and like impairment allegations made by Ellis, are unsupported by the medical and other evidence," and concluding that "[a]lthough some comment on the statement by the ALJ might have at least removed the statement as an issue, a remand would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources."), *report and recommendation adopted*, 2012 WL 5304201 (E.D. Tenn. Oct. 25, 2012); *Fouasnon v. Comm'r of Soc. Sec.*, No. 1:21-CV-00484-DAR, 2022 WL 3281826, at *15 (N.D. Ohio June 15, 2022) ("An ALJ does not commit reversible error where the third-party evidence not articulated is cumulative of the other evidence of record that the ALJ did consider and articulate."), *report and recommendation adopted*, 2022 WL 3681792 (N.D. Ohio Aug. 25, 2022). At least one out-of-circuit district court has similarly held: "While the ALJ did not specifically go through each of the other nonmedical opinions, as she did for plaintiff's opinions, 'any error in failing to do so is harmless because 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Johnston v. Kijakazi*, No. 20-cv-01366-PAB, 2022 WL 1439112, at *8 (D. Col. May 6, 2022) (quoting *Best-Willie v. Colvin*, 514 F. App'x 728, 736 (10th Cir. 2013)).

13

Plaintiff does not identify any relevant information in the testimony from Mr. Page or in any of the written statements that is not repetitive of Plaintiff's own descriptions of her symptoms. After careful consideration and examination of the third-party evidence, the Court finds the third-party evidence is sufficiently cumulative such that the ALJ's failure to discuss it or assign it a specific weight is, at most, harmless error. *See Weaver*, 2015 WL 64873, at *10 ("Although an ALJ should not disregard without comment a lay witness's testimony, failure to do so is not necessarily reversible error." (cleaned up)).

For example, Lisa Bledsoe (Plaintiff's friend since 2008) wrote that Plaintiff "cannot brush her own hair," "must rest for long periods between each chore or just get help from her family, and generally "loves to be independent and perform her household chores but what little she accomplishes she pays for." (Tr. 325). Plaintiff's husband, Mr. Page, testified that he helps with Plaintiff's hair sometimes, and he and/or Plaintiff's daughters help with chores (Tr. 52). Plaintiff's daughter Brittany Bledsoe echoed this sentiment, writing that Plaintiff "tr[ies] to be independent and can't most of the time," such that family members have to help Plaintiff wash her hair (Tr. 322). Matthew Parker, Plaintiff's son-in-law, wrote that Plaintiff "cannot do very much lifting or pulling" and "cannot stand for long periods" without taking a break. Similarly, the ALJ noted that Plaintiff testified she experienced severe fatigue, could not stand for more than five minutes, and she needed help caring for her hair (Tr. 21). Mr. Parker noted Plaintiff "cannot function nearly what she was able to do two years ago," because the "pain that she is in on a daily basis affects her daily tasks at home (Tr. 320), similar to Plaintiff's testimony, specifically acknowledged by the ALJ, describing how Plaintiff experienced "pain in her joints including her shoulders, ankles, knees, and feet," which made showering and caring for her hair difficult (Tr. 21).

In his written statement, Plaintiff's husband wrote that Plaintiff's "mental health has deteriorated to the point that some days depression is an overwhelming issue and she just withdraws from nearly everything," and further that Plaintiff's "memory has declined to the point that some days she can't remember kids/grandkids names." (Tr. 327). Plaintiff's daughter Robin Parker wrote: "I have seen my mother, a woman who once was vibrant and involved become a reclusive, depressed individual." (Tr. 326); and, Plaintiff's other daughter, Ms. Bledsoe, wrote that Plaintiff "has days she can barely get from the bed to the couch." (Tr. 321). Similarly, as the ALJ noted in the written decision, Plaintiff testified that at times she was "unable to leave her home" due to her depression and anxiety (Tr. 21). In her March 2019 Adult Function Report (which the ALJ repeatedly cited), Plaintiff wrote that her "memory has gotten bad," such that she "can start a sentence" but then forget what she was talking about (Tr. 266, 273). All of the statements and the testimony reflect that Plaintiff suffers from pain which limits her ability to perform activities of daily living, which the ALJ clearly acknowledged (Tr. 21-23).

Plaintiff does not identify any particular limitation that she believes is supported by the third-party evidence and which would have rendered her disabled during the period of time at issue. It is her burden to do so. *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).

Further, the ALJ adopted restrictions consistent with the third-party evidence, ultimately concluding Plaintiff did qualify as disabled beginning on June 26, 2020. As the Commissioner notes, the ALJ assessed an RFC for a reduced range of sedentary work, which would accommodate allegations that Plaintiff cannot stand or walk for long periods of time or perform any heavy lifting.

15

A common allegation in the third-party statements was that Plaintiff could no longer tolerate heat, and the ALJ specifically assessed a limitation for "no concentrated exposure to temperature" (Tr. 20). Moreover, the ALJ explicitly stated that Plaintiff's RFC assessment was made "[a]fter careful consideration of the **entire** record," implying that the ALJ did consider the third-party evidence (Tr. 20 (emphasis added); *see also* Tr. 21 ("the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.")). *Weaver*, 2015 WL 64873, at *11 (affirming despite ALJ's failure to discuss testimony of claimant's sister, reasoning that, "[n]ot only are the Plaintiff and Ms. Reynolds's testimony similar, the ALJ explicitly stated that Plaintiff's RFC assessment was made 'after careful consideration of the *entire* record.'").

The foregoing discussion supports the conclusion that the ALJ properly evaluated Plaintiff's reported symptoms and complaints in a manner consistent with relevant SSA policies and regulations, including SSR 16-3p, despite the ALJ's failure to explicitly discuss the third-party evidence. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted), and Plaintiff has failed to show any harmful error in the ALJ's decision in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

In sum, because the ALJ had "the enormous task of making sense of the record, reconciling conflicting . . . opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," this Court's review is limited to whether the ALJ relied on evidence that "a reasonable

16

Case 2:21-cv-00166-SKL   Document 21   Filed 09/23/22   Page 16 of 17   PageID #: 669

mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's symptoms and her overall RFC, the ALJ explained the evidence that supported his conclusions, and the ALJ's explanation makes clear why he did not credit contrary evidence. The Court does not condone the ALJ's failure to specifically address the well-written and heartfelt expressions from Plaintiff's family members and friend. Nevertheless, as this Court and the Sixth Circuit have repeatedly held, where "remand would be an idle and useless formality," courts are not required to "covert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion)).

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for judgment on the pleadings [Doc. 10] is **DENIED**;

(2) The Commissioner's motion for summary judgment [Doc. 13] is **GRANTED**; and

(3) The Commissioner's partially favorable decision awarding benefits beginning on June 26, 2020, and denying benefits for the time period between May 1, 2018, and June 25, 2020, is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

17

Case 2:21-cv-00166-SKL   Document 21   Filed 09/23/22   Page 17 of 17   PageID #: 670